ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2010 JUN 30 P 4: 47
CLERK
SO. DIST. OF GA.

| | | |
|---|---|---|
| CLAUDIO MONTERO, | ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | CV 309-073 |
| WALT WELLS, Warden, | ) ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate currently incarcerated at McRae Correctional Facility ("McRae") in McRae, Georgia, has commenced the above-captioned case pursuant to 28 U.S.C. § 2241 contesting, among other things, the execution of his sentence of confinement. Respondent has filed his response to the petition. (Doc. no. 9.) Both parties have also filed reply briefs. (Doc. nos. 12, 13.) For the reasons stated more fully below, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent Wells.

### I. BACKGROUND

**A.   Procedural Background**

Petitioner is serving a sentence of 120 months for conspiracy to possess cocaine with intent to distribute; possession of cocaine base with intent to distribute; aiding and abetting; and use of a communication facility to commit a felony. (Doc. no. 9, Ex. 1, p. 3); see also United States v. Montero, CR 301-195 (D.V.I. May 10, 2001). He is scheduled for release

on February 15, 2011, via good conduct time release. (Doc. no. 9, Ex. 1, p. 3.) Petitioner filed this § 2241 petition contending that he has impermissibly been deprived of twenty-seven (27) days of good conduct time ("GCT"), after being found guilty by a disciplinary hearing officer ("DHO") of participating in a group demonstration, in violation of prison regulations. (See generally doc. no. 1.) Petitioner claims in his petition that the disciplinary procedures violated due process. (See id. at 2-3.) Petitioner also attempts to assert various causes of action under the Religious Freedom Restoration Act, the Equal Protection Clause of the Fourteenth Amendment, the First Amendment, and the Eighth Amendment. (See id. at 3-6.) As relief, Petitioner requests restoration of the 27 days of GCT and expungement of the disciplinary report from his record. (Id. at 7.)

The Court directed service to be effected on Respondent and instructed Respondent to show cause why Petitioner's writ should not be granted by filing a response within twenty (20) days of the date of service. (Doc. no. 3.) Respondent contends that Petitioner was afforded due process with respect to his disciplinary hearing and that his other claims are not cognizable in this habeas petition, are unexhausted, or are otherwise without merit. (See generally doc. no. 9.)

## B. Disciplinary Charges and Proceedings

Respondent provides that on January 28 and 29, 2009, staff at McRae became aware of what they believed to be an inmate food boycott, which involved a group of inmates refusing to eat the provided kosher meals. (Doc. no. 9, Ex. 4, ¶ 5.) Respondent further provides that the suspected boycott was identified as specifically targeting the evening meal served on January 28, 2009, and the morning and noon meals served on January 29, 2009.

(Id.) According to Respondent, an initial investigation into the suspected food boycott identified Petitioner as a possible participant since he did not receive the meals that were identified as the target of the suspected boycott. (Id. ¶ 6.)

Accordingly, on January 29, 2009, Petitioner was placed in the Special Housing Unit pending an investigation of his participation in the suspected boycott. (Id. ¶ 7.) On the same day, a unit manager conducted an interview with Petitioner, during which Petitioner stated that he did not pick up his meals because he was Jewish and was not getting "healthy food." (Doc. no. 9, Ex. 9, § V.) Petitioner also stated during this interview that he did not pick up the meals because "[w]e don't get enough food[,] and we don't get enough vegetables." (Id.) Following the interview, an incident report was prepared charging Petitioner with Engaging in a Group Demonstration in violation of Code 212 of the disciplinary regulations. (Doc. no. 9, Ex. 4, ¶ 8 & Ex. 5.) A copy of this incident report was delivered to Petitioner on January 30, 2009. (Doc. no. 9, Ex. 4, ¶ 8 & Ex. 5.) However, Respondent maintains that because 119 inmates were suspected of participating in the boycott, the investigation into Petitioner's incident report was suspended pending the results of an investigation by McRae's Special Investigation Services ("SIS"). (Doc. no. 9, Ex. 4, ¶ 9.)

Respondent further provides that the SIS investigation was finalized on February 23, 2009. (Id.) On February 26, 2009, the suspension on Petitioner's incident report was lifted, and the investigation into his incident report began. (Doc. no. 9, Ex. 5, § 22.) Also on that day, the investigator assigned to Petitioner's case advised Petitioner of his right to remain silent at all stages of the disciplinary process and then proceeded to question Petitioner about his involvement in the suspected boycott. (Id. §§ 23, 26-27.) During the interview,

3

Petitioner stated, contrary to his prior statements to the unit manager, that he did not pick the meals that were identified as the target of the suspected boycott because he was told by other inmates not to pick up the meals, and he did not want any trouble from them. (Id. § 24.) Despite these statements, the investigator concluded that there was sufficient evidence to continue processing the incident report and forwarded the report to the Unit Disciplinary Committee ("UDC") for a hearing. (Id. §§ 26-27.)

The UDC held a hearing on March 3, 2009, at which Petitioner appeared and provided a statement maintaining that he did not receive the targeted meals because he was told by other inmates not to do so and feared for his safety if he did. (Id. § 17.) Due to the nature of the allegation against Petitioner, the UDC made no decision and referred the matter for a hearing by a DHO. (Id. §§ 18-20.)

On March 3, 2009, the UDC provided Petitioner with notice of his rights before the DHO, including his right to call witnesses, to present evidence, and to request assistance from a staff representative. (Doc. no. 9, Exs. 7 & 8.) However, Petitioner signed a form in which he indicated that he was choosing not to exercise those rights. (Doc. no. 9, Ex. 8.) At the hearing on April 13, 2009, Petitioner was given the opportunity to make a statement, as well as another opportunity to present documents and call witnesses. (Doc. no. 9, Ex. 9, §§ II(A) & III(B)-(C).) While Petitioner did not call witnesses or present any documents at the hearing, he did make a statement, in which he denied his participation in the Group Demonstration and maintained that he did not pick up the targeted meals because he feared for his safety if he did. (Id. § III(B).)

On April 15, 2009, the DHO issued his written decision, in which he indicates that in making his decision, he considered the incident report and investigation, the meal monitoring records from McRae, the January 29th interview questionnaire, and a memorandum from the Assistant Chief of Security. (Id. § III (D).) According to the DHO's Report, the meal monitoring records indicated that between January 22, 2009, and January 29, 2009, the only meals Petitioner did not receive were the ones identified as the target of the Group Demonstration. (Id. § V.) Furthermore, the DHO noted that when questioned by the unit manager on January 29th as to why he had participated in the suspected boycott, Petitioner had stated that he did not pick up his meals because he was Jewish and was not getting "healthy food." (Id.) The January 29th questionnaire also indicated that Petitioner had told the unit manager that he did not pick up his meals because "[w]e don't get enough food[,] and we don't get enough vegetables." (Id.) In his decision, the DHO pointed out that these statements contradicted Petitioner's representations to the UDC and the DHO that he did not pick the targeted meals because he feared for his safety. (Id.) In addition, the memorandum written by the Assistant Chief of Security indicated that he monitored the serving of the kosher meal at noon on January 29th and that he observed only one inmate participate in the meal (who was not Petitioner).[1] (Id.) As noted above, the meal monitoring records confirmed that Petitioner did not pick up the noon meal on January 29th.

Based on this evidence, the DHO found Petitioner guilty of participating in the Group Demonstration and sanctioned him with a loss of 27 days of GCT. (Id. § VI.) The DHO explained that he had imposed this sanction because such behavior "threatens the safety of

---

[1] This one inmate did not receive an incident report. (Doc. no. 9, Ex. 9, § V.)

all inmates as well as the overall security of the facility. In the past, group demonstrations have led to ser[i]ous damage to facilities as well as ser[i]ous injury to staff and inmates alike, to both people involved and people not involved in the demonstration." (Id. § VII.) With those facts in mind, the Court turns to the merits of the claims raised in the § 2241 petition.

## II. DISCUSSION

### A. Due Process Claim

As noted above, Petitioner claims that his due process rights were violated during the course of the events described above. Specifically, Petitioner appears to be concerned with the delay that occurred between the suspected boycott on January 28 and 29, 2009, and his hearing before the DHO on April 13, 2009. (See generally doc. no. 1.) On the other hand, Respondent contends that Petitioner received all the rights to which he was entitled, and therefore, he is not entitled to relief. (See doc. no. 9, pp. 10-14.) Respondent has the better argument.

In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. However, a prisoner facing a disciplinary hearing is still entitled to compliance with the following minimum due process protections: (1) written notice of the charges against him at least 24 hours before his hearing; (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) an opportunity to call witnesses and present documentary evidence in his defense. Id. at 563-67; see also Asad v.

Crosby, 158 F. App'x 166, 172-73 (11th Cir. 2005) (*per curiam*); Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999).

In addition to these procedural due process requirements, the Supreme Court has explained that the degree of proof required at a prison disciplinary hearing to satisfy due process is significantly lower than that required in a criminal prosecution. In Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), the Supreme Court concluded that a finding that "some evidence" supports the decision of a prison disciplinary board is enough to satisfy the minimum due process requirements for prisoners facing loss of GCT:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. [103,] 106... [(1927)]. Ascertaining whether this standing is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Id. at 455-56. The Eleventh Circuit has further explained the limited judicial review that federal courts may undertake in reference to prison disciplinary actions:

> The federal courts cannot assume the task of retrying all prison disciplinary disputes. No de novo review of the disciplinary board's factual finding is required, but the courts must consider whether at least the decision is supported by "some facts"--"whether any evidence at all" supports the action taken by prison officials.

Young v. Jones, 37 F.3d 1457, 1460 (11th Cir. 1994) (quoting Smith v. Rabalais, 659 F.2d 539, 545 (5th Cir. 1981)).

Here, the Court concludes that the procedural due process requirements were met with respect to Petitioner's disciplinary hearing and that "some evidence" supports the DHO's decision. Indeed, as noted above, on January 30, 2009, Petitioner was provided with

7

a copy of the incident report notifying him of the charges against him. (Doc. no. 9, Ex. 4, ¶ 8 & Ex. 5.) When the UDC referred the matter to the DHO for a hearing on March 3, 2009, Petitioner was advised of the rights afforded to him at his disciplinary hearing, which included, among other things, his rights to call witnesses and present evidence. (Id., Exs. 7, 8.) However, as noted in the DHO Report, Petitioner chose not to exercise these rights. (Doc. no. 9, Ex. 9, §§ II(A) & III(B)-(C).) Furthermore, the DHO issued a detailed report explaining the evidence he relied on in reaching his decision, as well as his reasons for sanctioning Petitioner with a loss of 27 days of GCT. (Id. §§ III(D), V, VII.) The DHO Report indicates that a copy was delivered to Petitioner on April 20, 2009, and Petitioner does not contest that he received this report. (Id. § IX.) In fact, Petitioner has attached a copy of the DHO Report to his § 2241 petition. (See doc. no. 1, Ex. B.) Finally, the Court finds that the decision of the DHO is supported by "some evidence." Indeed, Petitioner's own statements to the unit manager, as well as the meal monitoring data and memorandum from the Assistant Chief of Security, demonstrate that Petitioner did not pick up the meals that were identified as the target of the Group Demonstration.

To the extent Petitioner contends that the delay in handling the incident report deprived him of due process, this argument fails. To begin, the Court notes that approximately two and a half months elapsed between the time McRae officials became aware of the suspected boycott on January 28 and 29, 2009, and Petitioner's hearing before the DHO on April 13, 2009. However, a speedy resolution of the charges is not one of the procedural due process rights required to be afforded to prisoners facing loss of GCT. See Dixon v. Hastings, 202 F. App'x 750, 751-52 (5th Cir. 2006) (*per curiam*) (finding that

allegations that prison officials delayed disciplinary proceedings did not establish due process violation); see also Peters v. Anderson, 27 F. App'x 690, 692 (7th Cir. 2001) (holding that state inmate's procedural due process rights were not violated by the postponing of his disciplinary hearing where inmate could not show that he was prejudiced by the delay). Rather, as noted above, before a prisoner can be deprived of GCT, the prisoner is simply entitled to: (1) advance, written notice of the charges; (2) a written statement of the facts and evidence relied on and the reason for the disciplinary action taken; and (3) the opportunity to call witnesses and present documentary evidence. Wolff, 418 U.S. at 563-67. As discussed above, these requirements were met, and thus, Petitioner's dissatisfaction with the delay that occurred between the suspected boycott and his disciplinary hearing do not implicate due process concerns.

In any event, the Court agrees with Respondent that any delay that Petitioner experienced was necessary to ensure that he received due process. (See doc. no. 9, pp. 11-12.) Indeed, as discussed above, Respondent has provided that 119 inmates were identified as possible participants in the suspected boycott, and a special investigation was completed by SIS before Petitioner's incident report was processed. (Doc. no. 9, Ex. 4, ¶ 9.) The Court also notes that the investigation was completed less than a month after prison officials became aware of the suspected boycott, and the suspension on the investigation into Petitioner's incident report was lifted 3 days after the SIS investigation was completed. (Doc. no. 9, Ex. 4, ¶ 9 & Ex. 5, § 22.) Accordingly, the Court finds that Petitioner's claim that he was deprived of due process and is entitled to restoration of 27 days of GCT is without merit and fails to provide a basis for relief.

B.  **Remaining Claims**

As noted above, Petitioner also attempts to assert various causes of action under the Religious Freedom Restoration Act, the Equal Protection Clause of the Fourteenth Amendment, the First Amendment, and the Eighth Amendment. Specifically, Petitioner contends that other inmates who participated in the suspected boycott were not disciplined and that the food he is receiving at McRae is not kosher. However, these claims are not appropriate in this § 2241 petition. Indeed, the sole function of habeas corpus "is to provide relief from unlawful imprisonment or custody, and it cannot be used for any other purpose." Cook v. Hanberry, 592 F.2d 248, 249 (5th Cir. 1979), revised by 596 F.2d 658 (5th Cir. 1979).[2] "Habeas corpus is not available to prisoners complaining only of mistreatment during their legal incarceration." Id.

Here, however, the factual allegations raised in the remaining claims listed above challenge the conditions, rather than the fact or duration, of Petitioner's confinement. Such allegations may be appropriate in a civil rights complaint, but do not state cognizable grounds for relief in a § 2241 petition. Accordingly, Petitioner's remaining claims should be dismissed for failure to allege grounds on which § 2241 relief may be granted.

That said, at least as to Petitioner's equal protection claim, the Court recognizes that other courts have allowed federal prisoners to bring similar claims in § 2241 petitions. See, e.g., United States v. Tamayo, 162 F. App'x 813, 815 (10th Cir. 2006) (considering alien's "equal protection" challenge to "execution" of his sentence under § 2241). However, even if

---

[2]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981.

Petitioner's equal protection claim was appropriate in this § 2241 petition, this claim fails on the merits. Indeed, this claim appears to be based on Petitioner's contention that other inmates who did not pick up the targeted meals did not receive an incident report and accordingly were not disciplined because they performed certain necessary jobs at McRae. (See doc. no. 1, p. 4.) In order to state a viable equal protection claim, a prisoner must allege: (1) that he has been treated differently from other "similarly situated" inmates, and (2) that this discriminatory treatment is based upon a constitutionally impermissible basis, such as race. Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001) (*per curiam*). Here, even assuming *arguendo* that other inmates who did not pick up the targeted meals were not disciplined, Petitioner has not shown that this treatment was based on a constitutionally impermissible basis. Indeed, Petitioner admits that any disparate treatment was based on certain jobs held by these other inmates. Therefore, even if Petitioner's equal protection claim were appropriate in this § 2241 petition, his claim fails on the merits.[3]

Furthermore, with respect to Petitioner's claim that the food he is served at McRae is not kosher, this claim would still be subject to the exhaustion requirement, and as addressed *infra*, Petitioner has not satisfied that requirement as to his kosher food claim. The failure of a prisoner to exhaust his administrative remedies prior to filing a complaint or petition in federal court bars a court from granting relief under such a complaint or petition.

---

[3]The Court also notes that even if Petitioner's claim was appropriate in this § 2241 petition and his allegations satisfied the requirements of Jones, Petitioner still might not be entitled to relief in federal court. See Alba v. Montford, 517 F.3d 1249, 1254 (11th Cir. 2008) (holding that prisoners in a private federal facility are not entitled to relief under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), when adequate state remedies are available).

11

42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 92 (2006); Skinner v. Wiley, 355 F.3d 1293, 1295 (11th Cir. 2004) (*per curiam*); Gonzalez v. United States, 959 F.2d 211, 212 (11th Cir. 1992) (*per curiam*). Moreover, mere perceived futility of exhaustion does not excuse a prisoner from pursuing administrative relief before filing a civil complaint in federal court. E.g., Higginbottom v. Carter, 223 F.3d 1260, 1261 (11th Cir. 2000) (*per curiam*) (stating that "the exhaustion requirement [in a prisoner civil rights case] cannot be waived based upon the prisoner's belief that pursuing administrative procedures would be futile"); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994) (recognizing exhaustion requirement in relation to bringing § 2241 petition and noting any exception to exhaustion would apply only in "extraordinary circumstances"); cf. Jaimes v. United States, 168 F. App'x 356, 359 (11th Cir. 2006) (*per curiam*) (observing that whether habeas petitioner "may even assert a futility exception to the [exhaustion] requirement is questionable").

As noted above, Petitioner's claim that he is not being served kosher food at McRae is unexhausted. While Petitioner contends that he did exhaust this claim (see doc. no. 12, p. 8), a review of his grievance, appeals, and responses from the administration reveals that Petitioner was actually challenging the DHO's decision to sanction him with a loss of GCT and that he provided information regarding the alleged non-kosher food in support of his claim that he did not participate in the suspected boycott. (See doc. no. 9, Ex. 3.) Thus, even if Petitioner had brought his claim regarding the alleged non-kosher food in a civil rights complaint or if this claim was cognizable under § 2241, he would not be entitled to relief on this claim because of his failure to exhaust his administrative remedies.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent Wells.

SO REPORTED and RECOMMENDED this 30th day of June, 2010, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE